In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-228 CV


____________________



IN THE MATTER OF A.W.T.






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 04-10-08299 JV






MEMORANDUM OPINION


 A.W.T., a juvenile, pled true to the charge of "aggravated sexual assault--first degree
felony." See Tex. Pen. Code Ann. § 22.021(a)(2)(B) (Vernon Supp. 2006); Tex. Fam.
Code Ann. § 51.03(a)(1) (Vernon Supp. 2006), §§ 51.04(a), 54.045 (Vernon 2002). At the
time of the offense, A.W.T. was sixteen and the victim was six years old. After a disposition
hearing, the trial court determined A.W.T. needed rehabilitation and committed A.W.T. to
the Texas Youth Commission (T.Y.C.) for an indeterminate sentence. Tex. Fam. Code Ann.
§ 54.04 (Vernon Supp. 2006).

 A.W.T. contends that there was no evidence to support the juvenile court's finding
that commitment to T.Y.C. was in his best interest, or that a reasonable effort had been made
to prevent or eliminate the need for his removal from his home. Specifically, A.W.T. argues
the court abused its discretion in "ignor[ing] a less stringent placement that would have
allowed a faster return to the home with possibly better treatment than would be available
with a more restrictive placement." A.W.T. argues the court should have allowed placement
at the Rockdale Juvenile Justice Center (Rockdale) instead of committing him to T.Y.C. for
an indeterminate sentence. 

 We affirm the trial court's order. A juvenile court has broad discretion to determine
the proper disposition of a juvenile who has been adjudicated as engaging in delinquent
behavior. In the Matter of C.G., 162 S.W.3d 448, 452 (Tex. App.--Dallas 2005, no pet.). 
Absent an abuse of discretion, a reviewing court will not disturb the court's findings. Id. We
conclude the evidence is sufficient to support the trial court's order and that the trial court
did not abuse its discretion. 

 Section 54.04(c) of the Texas Family Code provides that no disposition may be made
at the disposition hearing "unless the child is in need of rehabilitation or the protection of the
public or the child requires that disposition be made." Tex. Fam. Code Ann. § 54.04(c)
(Vernon Supp. 2006). A juvenile court must include the following determinations in its order
committing a child to the Texas Youth Commission:

 (A) it is in the child's best interests to be placed outside the child's home;

 (B) reasonable efforts were made to prevent or eliminate the need for the
child's removal from the home and to make it possible for the child to
return to the child's home; and 

 (C) the child, in the child's home, cannot be provided the quality of care
and level of support and supervision that the child needs to meet the
conditions of probation[.]


Tex. Fam. Code Ann. § 54.04(i)(1) (Vernon Supp. 2006). The trial court included these
findings in its order committing A.W.T. 

 Dr. Kit Harrison, a psychologist appointed to evaluate A.W.T., testified for the State. 
He diagnosed A.W.T. with antisocial behavior, elements of attention deficit hyperactivity
disorder, bipolar disorder, and intermittent explosive disorder. Dr. Harrison based his
diagnosis on a one-and-a-half hour interview with A.W.T. and psychological tests he
administered to A.W.T. Dr. Harrison testified A.W.T. has a history of being undercontrolled
and is a high risk to reoffend. Dr. Harrison also discussed A.W.T.'s suicide attempts,
substance abuse issues, and learning difficulties. 

 Dr. Harrison stated A.W.T.'s medications need to be strictly supervised. He testified
that A.W.T. is a danger to himself and others if left unsupervised. Because of the differences
in age of A.W.T. and his victim, Dr. Harrison concluded A.W.T. has extremely poor
judgment and "tendencies to perhaps be aroused with children." He testified that at the time
of the interview there was no indication from A.W.T. that his home life was adequate for
supervision and control. Dr. Harrison also testified that at the time of the interview, it was
his opinion appellant would be a threat to the community if he remained at home in his
current situation. 

 Dr. Harrison recommended placement at T.Y.C. based on the treatment they could
provide. He believed T.Y.C. had a sex offender program. According to him, this highly
structured environment was the least restrictive environment that would protect society and
help A.W.T. He recommended periodic reviews. He stated A.W.T. is currently not a
candidate for an outpatient placement. Although he acknowledged a six-to-nine-month
placement for A.W.T. at a facility could be advantageous, he said a longer-term placement
would be necessary to help A.W.T. Dr. Harrison recommended against starting A.W.T. out
in a six-month program and then, if the program was unsuccessful in helping A.W.T.,
moving him to another program. 

 Cynthia Clinton, program director and teacher at Pathways School in the Conroe
Independent School District, also testified for the State. She testified A.W.T. attended the
school, on and off, for the last three years. She described him as manipulative, hostile, 
angry, and resistant to adult authority. He was resistant to the counseling Pathways offered
him. Clinton stated Pathways attempted to "manage" A.W.T.'s behavior, but has been
unsuccessful in rehabilitating him. It is Clinton's opinion that Conroe Independent School
District has done everything possible to rehabilitate A.W.T. 

 A.W.T.'s probation officer, Tammy Jolley, testified A.W.T. had been referred to the
Montgomery County Juvenile Probation Department five times and detained four times. In
her view, a structured environment was appropriate for A.W.T., and his placement on
probation to live with his mother or father would not provide him with adequate supervision. 
According to Jolley, any kind of outpatient placement for A.W.T. would be inappropriate
because he needs a long-term placement. She believes the probation department and the
community had offered A.W.T. all the resources available. She recognized his need for
rehabilitation and recommended placement at T.Y.C. 

 Psychologist Carmen Petzold testified for A.W.T. She conducted a psychological
evaluation, and spent eight hours interviewing him. She also spoke with his mother on
several occasions. She reviewed scores from four objective tests administered to A.W.T.,
and also reviewed medical records, medical record summaries, and school records. Dr.
Petzold diagnosed A.W.T. with bipolar disorder and attention deficit hyperactivity disorder. 
 Dr. Petzold testified Rockdale would be an appropriate placement for A.W.T. She
testified the staff at Rockdale was more qualified than the staff at T.Y.C. Although she
agreed the sex offender program at T.Y.C. was good, her biggest concern about T.Y.C. was
that A.W.T.'s placement in its sex offender program was not guaranteed. 

 A.W.T.'s mother testified. She asked the court to place A.W.T. at Rockdale because
the "nine months of intensive, appropriate treatment" would be better for A.W.T. than three
or four years of "maybe." 

 The trial court found A.W.T. was in need of rehabilitation. The evidence in the record
supports the trial court's determination that reasonable efforts had been made to eliminate
the need to remove A.W.T. from the home. The evidence also supports the trial court's
determination that A.W.T.'s parents could not provide the supervision necessary for A.W.T.
to meet conditions of probation. The trial court accepted Dr. Harrison's testimony that a
long-term program was necessary for A.W.T. On this record, we conclude the trial court did
not abuse its discretion in committing A.W.T. to the Texas Youth Commission for an
indeterminate sentence. 

 A.W.T.'s sole issue is overruled. The trial court's order of disposition is affirmed.

 AFFIRMED. 

 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on June 7, 2006

Opinion Delivered September 21, 2006


Before McKeithen, C.J., Gaultney and Horton, JJ.